IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID ZEGER, | ) | CASE NO. 1:07 CV 2399 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LOCK IT UP WEST, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

## Introduction

Plaintiff *pro se* David Zeger filed this diversity action against the following eight

defendants:  Lock It Up West, Provident Management Inc., Provident Development LLC,

Premier Management LLC, Premier Corporate LLC, Premier Equities LLC, Swack Group

Partnership, and Swack Limited Partnership.[1]   In the complaint, Zeger alleges that his

personal property, which he stored at Lock It Up West's storage facility, was unlawfully

removed from a storage unit and sold at auction.[2]  Zeger asserts claims for conversion and

breach of contract.[3]  The defendants have filed a motion to dismiss for lack of jurisdiction[4]

---

[1] ECF # 1 at 2.

[2] ECF # 4 at 1.

[3] *Id.* at 3-4.

[4] ECF # 76.

and a motion to dismiss seven of the eight defendants.[5]  Zeger has filed a motion to amend his complaint.[6]

For the reasons set forth herein, the defendants' motion to dismiss for lack of jurisdiction is denied, the defendants' motion to dismiss the seven defendants is granted, and Zeger's motion to amend his complaint is denied.

## Denial of Motion to Dismiss for Lack of Jurisdiction

Zeger's claim to jurisdiction arises from 28 U.S.C. § 1332,[7] which requires both diversity of citizenship and an amount in controversy in excess of $75,000.  The issue before this Court is whether Zeger has met this amount in controversy requirement.[8]

Zeger's two claims for recovery are breach of contract and conversion.[9]  For his breach of contract claim, Zeger seeks $105,000 in compensatory damages.[10]  For the conversion claim, Zeger seeks both compensatory and punitive damages: compensatory

---

[5] ECF # 56.

[6] ECF # 77.

[7] ECF # 1 at 4.

[8] ECF # 77 at 1-2.

[9] ECF # 4 at 3-4.

[10] ECF # 1 at 12.

damages of $105,000[11] and, pursuant to Ohio law, punitive damages of twice the compensatory amount, $210,000.[12]

Under *Klepper v. First American Bank*,[13] punitive damages are included in the amount in controversy requirement.  Furthermore, the amount in controversy alleged in the complaint generally will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount.[14]  Thus, if Zeger can, in good faith, claim anything more than $25,000 in compensatory damages for the conversion claim, he will meet the amount in controversy requirement of $75,000, since punitive damages of over $50,000 may also be included in that calculation.

In order to show his calculation of damages, Zeger submitted a nine-page spreadsheet, listing over 1,200 items that he claims to have left in his storage unit.[15]  The total value for these items adds up to $58,637.44.[16]  In addition, Zeger claims to have been deprived of certain "priceless" items, which he nonetheless values at $40,000.  His "priceless" items consist of the following (quantities in parenthesis):

---

[11] *Id.* at 11, 19.  *See also*, ECF # 82, Exs. J and K.

[12] ECF # 1 at 15, 19.  *See also*, ECF # 4 at 4 and ECF # 82 at 5-6.  In this case, Ohio law provides for punitive damages of the lesser of (a) two times the compensatory amount or (b) ten percent of the defendant's net worth. Ohio Rev. Code § 2315.21(D)(2)(b).

[13] *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir. 1990).

[14] *Id.*

[15] *See*, ECF # 82, Exs. J and K.

[16] *Id.*  In valuing these items, Zeger provides his own online research with the prices of brand new items.

- petrified wood discovered in '74  (1)
- coral from '94 Bahama's trip  (6)
- grandmother's handmade afghan gift  (1)
- very rare coins  (7)
- hat collection  (100)
- photo album - handmade gift  (3)
- hand-made stained glass art/container (gift)  (n/a)
- personal paintings  (n/a)
- letters from relatives and friends  (n/a)
- handmade gifts from daughters  (n/a)

Zeger also includes an additional $7,400 for the "Estimated Time & Expense for Recovery Process," which brings his total to approximately $105,000.[17]  In Zeger's complaint, he does not specifically discuss the many items listed on the spreadsheet but, instead, lists them in his attached exhibits.

This case represents Zeger's second attempt to "make a federal case" out of the underlying controversy.  His first attempt ended in a dismissal for lack of subject matter jurisdiction.

In an earlier case, No. 1:07cv1469, which District Judge Kathleen O'Malley dismissed for not meeting the amount in controversy requirement, Zeger claimed to have been deprived of the following:

> [H]is personal effects, of which have great importance, considerable intrinsic value, and of immeasurable inherent value to him, including but not limited to mementos, heirlooms, photos, documents, items of unique value, bank account information in both paper and electronic form, computers containing confidential and private personal data, rare or one of a kind items or antiques, household goods and other valuable personal property of his estate.[18]

---

[17] *Id.*

[18] ECF # 3 at 2 (Case No. 1:07cv1469), Memorandum of Opinion and Order of Judge O'Malley, quoting Zeger's dismissed complaint (ECF # 1).

In dismissing Zeger's complaint, Judge O'Malley noted that Zeger had not specified an amount he sought in damages.[19] Moreover, based on the available descriptions of Zeger's property, which had been relatively brief compared to Zeger's new descriptions, Judge O'Malley concluded that Zeger had not met the jurisdictional amount, punitive damages notwithstanding:

> [B]ased upon the nature of his claims and the facts alleged, it is very difficult to conclude that the damages would equal or exceed $75,000.00. Mr. Zeger's description of his lost property includes tools, handmade gifts from his toddlers, diaries, cards given to him by his ancestors, photos, mementos, computers and personal documents. The letter sent by Lock It Up West states that the property to be sold included a "Wagon, tools, lamp, [and a] shelf." While these items no doubt contain great sentimental value for Mr. Zeger, there is nothing to suggest that their monetary value would even approach $75,000.00.
>
> The court notes that Mr. Zeger also requests punitive damages. ... [Nevertheless, t]here is nothing in the complaint that reasonably suggests that the damages in this case could meet the jurisdictional requirement.[20]

Zeger now has specified an amount he seeks in damages and has also included a much more exhaustive list of his items of which he was allegedly deprived.  He is no longer claiming a mere loss of "tools, handmade gifts from his toddlers, diaries, cards given to him by his ancestors, photos, mementos, computers and personal documents," or as the letter from Lock It Up West states, "wagon, tools, lamp, [and a] shelf."[21] Zeger is now essentially claiming to have been deprived of over 1,200 items, which add up to about $58,000 under

---

[19] *Id.* at 4.

[20] *Id.*

[21] *Id.*

his calculations and which he has categorized into eight broad categories (Aquarium &
Supplies, Electronics, Furniture, Household, Memorabilia, Clothing, Tools, and
Miscellaneous). Also, under Ohio law, Zeger may not necessarily be limited to the fair
market value of his household goods. Even though a trier of fact may not value his
"priceless" items at $40,000, these items may still be valued at something more than a
*de minimus* value.[22]

Even if Zeger could not in good faith claim a compensatory value of over $75,000,
he still meets the amount in controversy requirement because of the punitive damages he may
recover under his conversion claim. As mentioned, claiming in good faith anything over
$25,000 in compensatory damages for conversion is enough to meet the jurisdictional
amount once punitive damages in the maximum amount permitted are included. Based on
the record before me, I cannot conclude that Zeger has not claimed at least $25,000 for
compensatory damages in good faith.

The question of jurisdiction, however, is completely separate from the question of
whether Zeger will succeed on the merits of either claim or whether, even if he is successful,
he is likely to recover anything close to $75,000. Assuming Zeger can succeed on the merits,
there will be a vigorous factual disputes as to what exactly was in the storage unit and how

---

[22] *See*, *Bishop v. East Ohio Gas Co.*, 143 Ohio St. 541, 545-46, 56 N.E.2d 164, 166
(1944) ("Where personal property is without market value, then the law allows the next best
evidence to be given to ascertain its value. In such cases, evidence as to cost and other
considerations which may affect value or which tend to show its worth, actual, real or
intrinsic, is admissible."). *See also*, *Downard v. Gilliland*, 2008 WL 2531595 (Ohio Ct. App.
June 20, 2008); *Akron Barberton Cluster Ry. Co. v. Brown*, 2007 WL 2712171 (Ohio Ct.
App. Sept. 19, 2007).

much it was really worth.  Not only is it strange to think that someone would leave nearly $100,000 worth of property in a storage unit and then not pay the $40 monthly fee on time,[23] it is also hard to conceive how such a large sum of money can be claimed given the evidence provided by the defense.  Indeed, the defense strongly disputes Zeger's valuation by pointing to the fact that his items sold for only $801.75 at an auction and that, in any event, even assuming Zeger was deprived of everything he claims on his spreadsheet, their expert appraiser valued those items at only $5,523.91.[24]  Nevertheless, even with this large discrepancy, I cannot conclude that Zeger has not met the minimal requirement of claiming the minimal jurisdictional amount in good faith.  The motion to dismiss for lack of jurisdiction is, therefore, denied.

Zeger may now move forward with the more arduous task of proving a violation of his vested legal rights[25] and then convincing a trier of fact that he is entitled to the remedy he seeks.[26]

Although I have ruled for Zeger on this jurisdictional challenge, I include this cautionary note.  28 U.S.C. § 1332(b) provides that if the plaintiff recovers less than $75,000 after final adjudication of the claim, the Court has the discretion to deny the plaintiff costs

---

[23] ECF # 4 at 1-2 and ECF # 1 at 12.

[24] ECF # 76 at 1-2.

[25] *See*, *Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.").

[26] A violation of a vested legal right does not, however, automatically entitle a plaintiff to the remedy he seeks.  *See*, *id.* at 154.

and to impose costs on the plaintiff.  In light of the highly speculative value of the property at issue, and the difficulties of proof inherent if this case goes to trial, Zeger may want to consider dismissing this case without prejudice and the refiling thereof in Richland County Court of Common Pleas to avoid the potential for sanctions under 28 U.S.C. § 1332(b).

## Granting of Motion to Dismiss the Seven Defendants

Zeger and Lock It Up West were the only parties to the agreement.[27]  Furthermore, the rental agreement, which Zeger signed, makes absolutely no reference to any of the seven additional defendants.[28]  Bernard Swack is the sole proprietor of Lock It Up West, a three-man operation that employs an office manager, Anita Collins, who conducts the day-to-day affairs of the business.[29]  Collins was the only Lock It Up West employee who dealt with Zeger.[30]  Although Swack had dealings with Zeger, Swack is an officer or director of the seven additional defendants.[31]  None of these seven defendants, however, are engaged in the self-service storage rental industry.[32]  Instead, their primary commercial purpose is to acquire, develop, and maintain apartment complexes.[33]  None of the seven defendants is a

---

[27] ECF # 56 at 2.

[28] ECF # 1, Ex. A.

[29] ECF # 56 at 3.

[30] *Id.*

[31] *Id.* at 4.

[32] *Id.*

[33] *Id.*

parent or subsidiary of, or is otherwise related to the day-to-day ownership, operation or management of, Lock It Up West.[34]

Zeger argues that the seven additional defendants should also be liable.[35] Zeger does not identify any legal basis for such liability but merely asserts that they "own and manage"[36] or at least have some type of connection to, or authority over, Lock It Up West.[37] Presumably, Zeger intends to argue that these seven defendants are liable under a theory of agency, with Lock It Up West being the agent of these seven defendants. In Ohio, "the relationship of principal and agent or master and servant exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks."[38]

Zeger argues that Lock It Up West is the agent of the seven defendants because of the following three basic reasons: (1) Swack, the sole owner of Lock It Up West, and his brother operate multiple self-service storage facilities in Ohio;[39] (2) Swack is an officer or director

---

[34] *Id.*

[35] ECF # 1 at 5 and ECF # 61 at 2-4.

[36] ECF # 1 at 5.

[37] ECF # 61 at 2-4.

[38] *Hanson v. Kynast*, 24 Ohio St. 3d 171, 173, 494 N.E.2d 1091, 1094 (1986) (citing *Baird v. Sickler*, 69 Ohio St. 2d 652, 654, 433 N.E.2d 593, 595 (1982)); *Councell v. Douglas*, 163 Ohio St. 292, 126 N.E.2d 597 (1955); *Bobik v. Indus. Comm.*, 146 Ohio St. 187, 191-92, 64 N.E.2d 829, 831 (1946); and Restatement of the Law 2d, Agency (1958) 7, Section 1.).

[39] ECF # 61 at 2-3.

of the seven other companies;[40] and (3) a man named William Shumaker has a relationship to Lock It Up West.

The first two reasons cannot establish a principal agent relationship.  Simply because Swack is involved with the seven other companies and simply because he (or his brother) may have additional storage unit facilities, does not show that the seven other companies (none of which deal with storage units) exercise the right of control over the actions of Lock It Up West.

Concerning the third ground, Shumaker's relationship to Lock It Up West, Zeger claims that Collins, the manager of Lock It Up West, told him to contact Shumaker to discuss a resolution, mentioning "he is one of the owners."[41]  Shumaker also sent Zeger a settlement offer that had five of the seven companies' names on the letterhead and attended a settlement conference (at which Swack, the owner of Lock It Up West, was absent).  With this evidence, Zeger has shown that Shumaker likely had the authority to issue a minor settlement offer on behalf of Lock It Up West.  Simply because Shumaker may act on behalf of Lock It Up West, at least with respect to a minor settlement offer, does not establish that Lock It Up West is under the authority and control of every company with which Shumaker is affiliated. The motion to dismiss the seven additional defendants is, therefore, granted.

---

[40] *Id.*

[41] ECF # 61 at 3.

## Denial of Zeger's Motion to Amend His Complaint

Zeger seeks to amend his complaint to revive civil counts for theft[42] and breaking and entering.[43]   Theft and breaking and entering are criminal offenses, and Zeger initially included these offenses in his complaint (Counts 1 and 2).[44]   However, this Court previously dismissed Counts 1 and 2 because the Ohio statutes for theft and for breaking and entering "pertain to criminal offenses; they do not provide private rights of action available to a civil plaintiff.  Accordingly, Counts 1 and 2 must be dismissed because they do not state claims upon which relief can be granted."[45]

Zeger's motion to amend his complaint has shed more light on what Zeger attempts to do.  It is now clear that Zeger does not intend to press criminal charges – something he cannot do but something which the Court had previously assumed he was trying to do. Instead, Zeger seeks to bring two additional civil actions under Ohio Revised Code § 2307.60, which states that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action."[46]   This statute requires a plaintiff to prove he was injured by a criminal act, which a plaintiff may do even if the defendant has not been

---

[42] Ohio Rev. Code § 2913.02.

[43] Ohio Rev. Code § 2911.13.

[44] ECF # 1 at 9-10.

[45] ECF # 4 at 3.  *See also*, *American Postal Workers Union, AFL-CIO, Detroit Local v. Independent Postal Sys. of America*, 481 F.2d 90, 93 (6th Cir.1973).

[46] Ohio Rev. Code § 2307.60(A)(1).

criminally convicted.[47]  If Zeger brings a civil action under Ohio Revised Code § 2307.60 in which he alleges to have suffered a loss through a "theft offense," such as theft or breaking and entering, then Zeger believes that Ohio Revised Code § 2307.61 would set forth the damages Zeger could recover.[48]

Federal Rule of Civil Procedure 15(a)(2) governs Zeger's request to amend his complaint.  This rule instructs the Court that it "should freely give leave when justice so requires."  However, there is no absolute or automatic right to amend a complaint, and "[t]he district court has discretion in determining whether to permit an amendment, and its decision will be overturned only if it has abused that discretion."[49]  The Court may deny leave to amend if the complaint, as amended, would fail to state a claim.[50]

During the last term, the Supreme Court elaborated upon the standards that district courts should apply in deciding if a complaint pleads sufficient facts to state a claim.  In *Ashcroft v. Iqbal*,[51] the Court discussed what a plaintiff must do to satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  The following guidelines emerged from that decision:

---

[47] *See*, ECF # 77 at 4-5.

[48] Theft and breaking and entering are both "theft offenses," as defined in Ohio Rev. Code § 2913.01(K).

[49] *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991).

[50] *Schliewe v. Toro*, 138 F. App'x 715, 722 (6th Cir. 2005).

[51] *Ashcroft v. Iqbal*, 173 L. Ed. 2d 868 (2009).

- A pleading must do more than offer labels or conclusions or a formulaic recitation of the elements of a cause of action.[52]

- A complaint is insufficient if it offers naked assertions devoid of factual enhancement.[53]

- A complaint must have facial plausibility. It must contain facts that are more than merely consistent with defendant's liability. It must plead facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.[54]

- The district court is not required to accept as true legal conclusions couched as factual allegations.[55]

In this case, Zeger's proposed amended complaint fails to state a claim. There is nothing in Zeger's pleading beyond conclusory allegations that Lock It Up West had the necessary criminal intent to deprive Zeger of his property. It is undisputed that, after some of Zeger's personal property was sold at auction, Lock It Up West took significant steps to recover the property and return it to Zeger.[56] It is not facially plausible that Lock It Up West has criminal liability for an inadvertent sale at auction of personal items that Zeger stored in his rented storage unit.[57] It is also not plausible that Lock It Up West intended to criminally profit from the wrongful seizure and sale of Zeger's rpoperty, especially since it sent Zeger a check for $801.75 as restitution for the items sold at auction and then repurchased some of

---

[52] *Id.* at 883.

[53] *Id.* at 884.

[54] *Id.*

[55] *Id.*

[56] ECF # 80 at 2-3.

[57] ECF # 81 at 2.

-13-

those items.[58]  The plausible inference is that Lock It Up West was attempting to satisfy what it believed to be a valid a lien under a written contract and Ohio law, not criminally steal Zeger's property.[59]  Allowing Zeger to now amend his complaint to revive these crime-based claims, which would fail on their merits, would be an imprudent use of limited judicial resources and place an unnecessary burden on Lock It Up West.  Zeger's motion to amend (revive) his complaint is, therefore, denied.

## Conclusion

For the foregoing reasons, I conclude that the defendants' motion to dismiss for lack of jurisdiction is denied, the defendants' motion to dismiss the seven defendants is granted, and Zeger's motion to amend his complaint is denied.

IT IS SO ORDERED.

Dated:   August 7, 2009                         s/ William H. Baughman, Jr.
                                                United States Magistrate Judge

---

[58] ECF # 56, Ex. F and ECF # 76 at 1.

[59] ECF # 80 at 4.